# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8708 | **DATE** | 5/22/2003 |
| **CASE TITLE** | Stawski Distributing Co., Inc. vs. Zywiec Breweries, PLC | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for ____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Zywiec's motion for a stay of this case and to compel arbitration is denied [#7] while Stawski's motion to stay arbitration is granted [#12]. The court orders the arbitration between the parties scheduled for June 3, 2003 in Warsaw, Poland stayed pending resolution of this case. This case will be called for status on June 10, 2003 at 9:30 a.m. In the meantime, the parties are directed to meet in a sincere effort to resolve this case.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 3 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 19 |
| | Copy to judge/magistrate judge. | | 5/22/2003 | |
| MD | courtroom deputy's initials | | date mailed notice | |
| | | | MD | |
| | | | mailing deputy initials | |

COURT
FILED FOR DOCKETING

03 MAY 22 PM 4: 22

CLERK COURT

Date/time received in
central Clerk's Office

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAY 2 3 2003

|                                        |     |                              |
|----------------------------------------|-----|------------------------------|
| STAWSKI DISTRIBUTING CO., INC.,        | )   |                              |
|                                        | )   |                              |
| Plaintiff,                             | )   |                              |
|                                        | )   |                              |
| vs.                                    | )   | No. 02 C 8708                |
|                                        | )   | Judge Joan H. Lefkow         |
| ZYWIEC BREWERIES PLC,                  | )   |                              |
|                                        | )   |                              |
| Defendant.                             | )   |                              |
|                                        | )   |                              |

## MEMORANDUM OPINION AND ORDER

On December 2, 2002, plaintiff, Stawski Distributing Co., Inc. ("Stawski"), filed this

action against defendant, Zywiec Breweries PLC ("Zywiec"), seeking to enjoin Zywiec from

wrongfully terminating a beer distribution relationship under the Illinois Beer Industry Fair

Dealing Act, 815 ILCS 720 *et seq.* ("IBIFDA" or the "Act"). Stawski, an Illinois corporation

with its principal place of business in Chicago, is an importer and distributor of wine, spirits,

beer and mineral water. Zywiec, a Polish corporation with its principal place of business in

Poland, is a brewer of malt beverages and exports into the United States Zywiec Beer, Krakus

Beer and Porter Beer (the "Products"). Stawski formerly served as the exclusive distributor of

Zywiec's Products in the United States, but currently imports and distributes only to the states of

Illinois, Michigan, Wisconsin, Indiana, Ohio, Minnesota and Colorado. The parties executed an

"Import and Wholesale Distribution Agreement" dated July 7, 1997 (the "Agreement"),

containing a perpetual term that either party could terminate on 12-month's written notice. The

Agreement also contained an arbitration clause purporting to have any disputes settled by the Arbitration Court of the Polish Chamber of Foreign Trade in Warsaw under Polish Civil Law.

On July 10, 2002, Zywiec sent Stawski a letter attempting to terminate the Agreement on 12-month's notice. Stawski maintains that the letter does not state the reasons for the termination and does not provide Stawski with an opportunity to cure in violation of the IBIFDA. Stawski alleges that the IBIFDA governs the relationship between the parties and requires a supplier to provide a statement of reasons for the cancellation of an agreement, a good-faith effort to resolve all disputes under any agreement, and a period to cure the stated reasons for termination. *E.g.*, 815 ILCS 720/3(2), 720/4. Therefore, Stawski filed this suit under the IBIFDA seeking declaratory relief, a permanent injunction, and damages under theories of unjust enrichment misappropriation of goodwill, breach of covenant of good faith and fair dealing, unjust enrichment–misappropriation of intellectual property rights and breach of contract.

Zywiec, in belief that the filing of this action breached the Agreement, filed an arbitration demand with the Polish Arbitration Court in Warsaw on February 13, 2003. The arbitration is scheduled to take place in Poland on June 3, 2003. Currently, Zywiec has moved this court to stay the instant action and compel arbitration as per the terms of the Agreement. Stawski has cross-moved for the court to stay the arbitration on grounds that it has the right under the IBIFDA to bring this action alleging violation of the Act in this forum. Moreover, Stawski claims that the arbitration clause in the Agreement is invalid and violates the IBIFDA. Because this action is between a citizen of Illinois and a citizen of a foreign state and the amount in controversy exceeds $75,000, this court's jurisdiction rests in 28 U.S.C. § 1332(a)(2). For the reasons stated

below, Zywiec's motion to stay this case and to compel arbitration is denied while Stawski's motion for a stay of arbitration is granted.

## DISCUSSION

Stawski moves to stay the arbitration in this case on grounds that it has the right to bring an action for Zywiec's alleged violations of the IBIFDA in this forum. Stawski claims that Zywiec has (1) improperly terminated the Agreement without cause, without an opportunity to cure and without compensation, *see* 815 ILCS 720/4; (2) violated the IBIFDA by presenting Stawski with an agreement failing to comply with the IBIFDA because the Agreement required arbitration of all disputes, *see* 815 ILCS 720/5(12);[1] and (3) violated procedural provisions of the IBIFDA because that Act allows both parties the absolute right to reject arbitration of any particular claim and to have any claim arising out of the statute to be decided in a court of competent jurisdiction in Illinois. *See* 815 ILCS 720/9(1) & (6).[2]

---

[1] 815 ILCS 720/5 provides

No brewer shall:
***
(12) Present an agreement requiring the wholesaler to arbitrate all disputes without offering the wholesaler in writing the opportunity to reject arbitration and elect to resolve all disputes by maintaining a civil suit in accordance with this Act.

[2] 815 ILCS 720/9(1) provides,

If the brewer or wholesaler who is party to an agreement pursuant to this Act fails to comply with this Act or otherwise engages in conduct prohibited under this Act, the affected party may maintain a civil suit in court if the cause of action directly relates or stems from the relationship of the individual parties under the agreement, provided that any such suit shall be filed in a State or federal court of competent jurisdiction located in Illinois.

815 ILCS 720/9(6) provides,

(continued...)

3

Zywiec, while disputing that the IBIFDA does not allow for parties to agree to general pre-dispute arbitration clauses, *see Geneva Int'l Corp.* v. *Urquell,* No. 00 C 0152, 2000 WL 1898573, at *2-*3 (N.D. Ill. Dec. 26, 2000), concedes that the statute attempts to restrict the ability of suppliers to present arbitration agreements to distributors. Based on the IBIFDA's restrictions on the ability of suppliers to enforce their arbitration agreements, Zywiec contends that the IBIFDA is preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Zywiec, therefore, asks the court to apply the FAA so as to stay this action and compel arbitration.

If this were the usual case, the court would have little difficulty disposing of these motions. The parties entered into the Agreement that contained an arbitration clause. The FAA provides that

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . or any agreement in writing to submit to an arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This statute "compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc.* v. *Adams,* 532 U.S. 105, 111 (2001). While Stawski argues that it may bring suit in this court for violations of the IBIDFA and that the arbitration and

---

[2](...continued)
With respect to any dispute arising under this Act or out of the relationship between brewer and wholesaler, the wholesaler and the brewer each has the absolute right before it has agreed to arbitrate a particular dispute to refuse to arbitrate that particular dispute. Arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the laws of this State, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. A brewer may not, as a condition of entering into or renewing an agreement, require the wholesaler to agree to arbitration instead of judicial remedies.

forum selection clauses are invalid pursuant to the Act, under normal circumstances, because such a state statute would be in conflict with the FAA, it would be preempted under the Supremacy Clause. *See, e.g., Southland Corp.* v. *Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *Saturn Distrib. Corp.* v. *Paramount Saturn, Ltd.*, 326 F.3d 684, 687 (5th Cir. 2003) ("[T]he strong federal policy favoring arbitration preempts state laws that act to limit the availability of arbitration."); *Brayman Constr. Corp.* v. *Home Ins. Co.*, 319 F.3d 622, 627 (3d Cir. 2003) ("The FAA prevents state law from undermining parties' contracts to arbitrate."); *Koveleskie v. SBC Capital Markets*, 167 F.3d 361, 367 (7th Cir. 1999) ("[I]f a state singles out arbitration agreements, either statutorily or judicially, by imposing restrictions separate from general contract law, that state law is preempted by the FAA.").

This case, however, presents an issue that complicates the matter. As the IBIFDA deals expressly with Illinois's power to regulate the liquor industry, it is "promulgated pursuant to authority of the State under the provisions of the Twenty-first Amendment to the United States Constitution and to promote the public's interest in fair, efficient and competitive distribution of malt beverage products." 815 ILCS 720/2(A). Section 2 of the Twenty-first Amendment to the United States Constitution provides that the "transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." As the Supreme Court has stated on numerous occasions, this gives a state "'virtually complete control' over the importation and sale of liquor and the structure of the liquor distribution system." *North Dakota* v. *United States,*

5

495 U.S. 423, 431 (1990), citing *California Retail Liquors Dealers Ass'n* v. *Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980). The question, therefore, becomes what effect the Twenty-first Amendment has on the FAA in this case.

Stawski advances the claim that while the FAA might otherwise preempt any statute restricting arbitration, in this case the Twenty-first Amendment preempts the FAA, which, in turn, causes the IBIFDA provisions to be "saved." Naturally, Zywiec disagrees and argues that the FAA applies and is not preempted under the Twenty-first Amendment. Apparently no case law exists dealing with a situation in which the Twenty-first Amendment conflicts with the FAA, although Stawski does cite to an analogous situation where a portion of the bankruptcy code was found to be preempted by the Twenty-first Amendment. *See In re G. Heileman Brewing Co., Inc.*, 128 B.R. 876, 885 (S.D.N.Y. 1991) ("The Twenty-first Amendment raises Oregon's direct interest in alcohol regulation within its borders to a greater plateau than the competing bankruptcy interest."). Moreover, Stawski points to several Supreme Court cases discussed below which have developed a framework for analyzing statutes enacted under the Twenty-First Amendment when a conflict with federal law is present.

In deciding whether a state statute enacted pursuant to the Twenty-first Amendment should prevail when in conflict with federal law, a two-step analysis should be applied. First, the "threshold" matter is whether the statute does, in fact, conflict with federal law. *324 Liquor Corp.* v. *Duffy*, 479 U.S. 335, 341 (1987). If a conflict does exist, the relevant inquiry is "whether the interests implicated by a state regulation are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its

6

requirements directly conflict with express federal policies." *324 Liquor Corp.*, 479 U.S. at 347, quoting *Capital Cities Cable, Inc.* v. *Crisp*, 467 U.S. 691, 714 (1984).

As mentioned above, both parties agree that the IBIFDA conflicts with the FAA. The FAA provides for the judicial enforcement of written arbitration agreements entered into between parties so long as the contract in which those agreements are contained "involves commerce" and no generally applicable contract defense applies. 9 U.S.C. § 2; *Doctor's Assocs.* v. *Casarotto*, 517 U.S. 681, 685-86 (1996). Moreover, the New York Convention, enabled through the FAA, *see* 9 U.S.C. § 201, requires a court to refer a dispute to arbitration when (1) there is an agreement to arbitrate, (2) providing for arbitration in the territory of a signatory of the Convention, (3) arising out of a legal relationship considered to be commercial, and (4) one party is not an American citizen or the commercial relationship has reasonable relation to one or more foreign states. 9 U.S.C. § 202; *Ledee* v. *Ceramiche Ragno*, 684 F.2d 184, 186-97 (1st Cir. 1982).

The IBIFDA conflicts with the broad policy of enforceability of arbitration clauses under the FAA in a number of ways. Initially, when a violation of the Act occurs, the IBIFDA allows for suit to be filed in a state or federal court in Illinois. 815 ILCS 720/9(1). Thus, in a situation such as this one in which the agreement between the parties contains an arbitration clause specifying that disputes should be handled through arbitration in a particular forum, the IBIFDA conflicts with those provisions by allowing for suit to be brought in Illinois. In addition, the IBIFDA prohibits a brewer from even presenting an agreement requiring a wholesaler to arbitrate all disputes without offering the wholesaler in writing the opportunity to reject arbitration and elect to have all disputes decided by maintaining a civil action. 815 ILCS 720/5(12). This would run contrary to the FAA's broad policy of allowing for the enforceability of arbitration disputes

7

agreed to by parties. Finally, Stawski reads the IBIFDA as providing that a wholesaler and brewer each has the absolute right before it has agreed to arbitrate a dispute to refuse to arbitrate that particular dispute. 815 ILCS 720/9(6). In addition, the Act provides that if arbitration is agreed to, it must be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association and the laws of Illinois. *Id.* Zywiec disagrees with Stawski's interpretation concerning the absolute right to refuse to arbitrate and argues that pre-dispute arbitration clauses are valid under the IBIFDA. *See Geneva Int'l Corp.*, 2000 WL 1898573, at *2-*3.[3] Nevertheless, Zywiec does not dispute that the IBIFDA invalidates a distributorship agreement's arbitration provisions which would normally be valid under the FAA. Given that the other conflicts listed above exist between the IBIFDA and the FAA, the court need not definitively decide whether this clause also presents a conflict.

Since conflicts do exist between the IBIFDA and the FAA, the next question for the court to determine is whether the interests implicated by the IBIFDA are so closely related to the powers reserved by the Twenty-first Amendment that the IBIFDA may prevail notwithstanding any conflict with the FAA. Phrased another way by the Supreme Court, when conflict between the Twenty-first Amendment and federal interests is present, "[t]he competing state and federal interests can be reconciled only after careful scrutiny of those concerns in a 'concrete case.'" *Midcal Aluminum*, 445 U.S. at 946, quoting *Hostetter* v. *Idlewild Liquor Corp.*, 377 U.S. 324, 332 (1964).

---

[3] Zywiec also cites *Geneva* for the conclusion that the FAA preempts any restrictions on arbitration clauses contained in the IBIFDA. While that is the ultimate conclusion the court reached in that case, there was no analysis presented under the Twenty-first Amendment. Thus, the court does not believe *Geneva* is instructive of the issue as presented here.

In *Midcal Aluminum*, the Court considered a challenge to a state statute enacted under the Twenty-first Amendment which conflicted with federal antitrust interests under the Sherman Act, 15 U.S.C. §§ 1 *et seq.* The state statute in question provided that no "state-licensed wine merchant may sell wine to a retailer at other than the price set 'either in an effective price schedule or in an effective fair trade contract . . . .'" *Midcal Aluminum*, 445 U.S. at 99, quoting Cal. Bus. & Prof. Code Ann. § 24862 (West. Supp. 1980). The Court first examined the policies behind the Sherman Act, noting that the federal interest in competition promoted by the antitrust laws was both "familiar and substantial." *Id.* at 110. Moreover, while these antitrust laws were statutory and not constitutional creations, the Court noted that Congress had "'exercised all the power it possessed' under the Commerce Clause when it approved the Sherman Act." *Id.* at 111, quoting *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 435 (1932). Thus, the Court "acknowledge[d] the importance of the [Sherman Act's] procompetition policy." *Id.*

The Court went on to compare the federal interest in competition under the Sherman Act with the state's interest protected by the price maintenance system. The Court relied on another California Supreme Court case in finding that the interests protected by the California statute were temperance and orderly market conditions, specifically "protect[ing] small licensees from predatory pricing policies of large retailers." *Id.* at 112, citing *Rice v. Alcoholic Beverage Control Appeals Bd.*, 21 Cal. 3d 431, 451, 146 Cal. Rptr. 585, 598, 579 P.2d 476, 490 (1978). The Court relied on the California Supreme Court's previous opinion that such price controls did not promote temperance. *Id.* The Court also relied on the California Supreme Court's conclusion that such price controls were not necessary to the economic survival of small retailers, finding "no persuasive justification to continue 'fair trade laws which eliminate price competition

9

among retailers.'" *Id.* at 113, quoting *Rice*, 21 Cal. 3d at 457, 146 Cal. Rptr. at 603, 579 P.2d at 494. Thus, the Court concluded that the "unsubstantiated" state concerns put forward in the case did not rise to the stature of the goals of the Sherman Act, and the Twenty-first Amendment "provides no shelter for the violation of the Sherman Act caused by the wine pricing program." *Id.* at 113-14.

In *Capital Cities Cable, Inc.*, the Court examined a state statute enacted under the Twenty-first Amendment that prohibited television broadcast of wine commercials in the state, thereby causing great difficultly to cable television operators who retransmitted out-of-state signals. 467 U.S. at 695-96. This state statute was in conflict with existing federal regulations of cable broadcasting promulgated by the Federal Communications Commission ("FCC") pursuant to powers delegated under the Communications Act of 1934, 47 U.S.C. §§ 151 *et seq.* The Court found the federal interest in the FCC regulations governing signal carriage by cable television operators to be substantial, as this regulatory scheme struck "a balance between protecting non-cable households from loss of regular television broadcasting service due to competition from cable systems and ensuring that the substantial benefits provided by cable of increased and diversified programming are secured for the maximum numbers of viewers." *Id.* at 714.

By comparison, the Court found that Oklahoma's advertising ban on out-of-state signals was designed to further the state's interest in "discouraging consumption of intoxicating liquor." *Id.* at 714-15. The Court characterized this interest as "modest" or "narrow" given that the consumption of alcohol in Oklahoma increased in the last 20 years despite a ban on advertising of such beverages and Oklahoma had not chosen to press its campaign against alcohol on all fronts because print and broadcast commercials were still allowed for beer as well as

advertisements for all liquors contained in newspapers, magazines and other publications printed

outside of the state. *Id.* at 715. The court noted,

> In contrast to state regulations governing the conditions under which liquor may
> be imported or sold within the State, therefore, the application of Oklahoma's
> advertising ban to the importation of distant signals by cable television operators
> engages only indirectly the central power reserved by § 2 of the Twenty-first
> Amendment–that of exercising "control over whether to permit importation or
> sale of liquor and how to structure the liquor distribution system." *Midcal
> Aluminum*, 445 U.S. at 110.

> When this limited interest is measured against the significant interference
> with the federal objective of ensuring widespread availability of diverse cable
> services throughout the United States–an objective that will unquestionably be
> frustrated by strict enforcement of the Oklahoma statute–it is clear that the State's
> interest is not of the same stature as the goals identified in the FCC's ruling and
> regulations. As in *Midcal Aluminum*, therefore, we hold that when, as here, a
> state regulation squarely conflicts with the accomplishment and execution of the
> full purposes of federal law, and the State's central power under the Twenty-first
> Amendment of regulating times, places, and manner under which liquor may be
> imported and sold is not directly implicated, the balance between state and federal
> power tips decisively in favor of the federal law, and enforcement of the state
> statue is barred by the Supremacy Clause.

*Id.* at 715-16.[4]

In this case, the court is presented with nothing to suggest that the federal interest in the

FAA is insubstantial. The FAA was enacted in "response to hostility of American courts to the

enforcement of arbitration agreements, a judicial disposition inherited from then longstanding

English practice." *Circuit City Stores, Inc.*, 532 U.S. at 111. In passing the FAA, Congress

---

[4]For other cases providing a similar analysis where statutes enacted under the Twenty-first Amendment
conflict with federal interests, *see, e.g., 324 Liquor Corp.*, 479 U.S. at 350-51 (1987) (concluding that price control
statute with "unsubstantiated" interests in protecting small retailers and promoting temperance did not afford
immunity from the Sherman Act); *Brown-Forman Distillers Corp.* v. *New York State Liquor Auth.*, 476 U.S. 573,
584-85 (1986) (finding New York statute preempted under federal law because it attempted to control sales in other
states and not to regulate transportation and sale of alcoholic beverages in New York); *Bacchus Imports, Ltd.* v.
*Dias*, 468 U.S. 263, 276 (1984) ("State laws that constitute mere economic protectionism are therefore not entitled to
the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor.").

"declared a national policy favoring arbitration . . . ." *Southland Corp.*, 465 U.S. at 10. The FAA's "involving commerce" provision has been given broad effect to apply to a wide range of contracts. *Allied-Bruce Terminix Co.* v. *Dobson*, 513 U.S. 265, 273-74 (1995). Moreover, similar to the Sherman Act, the FAA, as interpreted by the Supreme Court, implements Congress's intent "to exercise [its] commerce power to the full." *Circuit City Stores*, 532 U.S. at 112, quoting *Allied-Bruce*, 513 U.S. at 277. All of the above persuades the court that the federal interest in the enforceability of arbitration clauses is substantial.

Unlike the situations in *Midcal Aluminum* and *Capital Cities Cable, Inc.*, however, the court believes that the IBIFDA is sufficiently within the core values of the Twenty-first Amendment for the state statute to prevail over the FAA and the corresponding federal interests. The IBIFDA's purpose is to "promote the public's interest in fair, efficient and competitive distribution of malt beverage products by regulation and encouragement of brewer and wholesaler vendors to conduct their business relations." 815 ILCS 720/2(A). The Act purports to reach these goals by "assuring the beer wholesaler is free to manage its business enterprise, including the wholesaler's right to independently establish its selling prices" and by "assuring the brewer and the public of service from wholesalers who will devote reasonable efforts and resources to sales and distribution of all the brewer's products, which wholesaler has been granted the right to sell and distribute and maintains satisfactory sales levels." 815 ILCS 720/2(A)(i) & (ii).

In choosing a three-tiered system of alcohol distribution which includes suppliers, wholesalers and retailers, Illinois has properly exercised the powers it has been granted under the Twenty-first Amendment to structure the liquor distribution system or to facilitate "orderly

12

market conditions," what the Seventh Circuit has referred to as a "euphemism for reducing competition and facilitating tax collection." *See Bridenbaugh* v. *Freeman-Wilson*, 227 F.3d 848, 851 (7th Cir. 2000). As the goal of the Act is to encourage a stable brewer/wholesaler relationship so as to protect the liquor distribution system Illinois has chosen to implement, it certainly is sufficiently related to core state interests under the Twenty-first Amendment. *See North Dakota*, 495 U.S. at 431, *Captial Cities Cable*, 467 U.S. at 715, *Midcal Aluminum*, 445 U.S. at 110.

In response, Zywiec urges the court to examine only the restrictions on arbitration and forum selection contained in the IBIFDA to determine whether these restrictions are sufficiently related to core concerns under the Twenty-first Amendment. Zywiec argues that such restrictions are not related to core Twenty-first Amendment concerns involving the importation of liquor or the structure of any liquor distribution system. Even if the court were to assume, however, that such arbitration and forum restrictions contained in the IBIFDA should necessarily be looked at outside of the general purposes of the Act, this argument is problematic.

The IBIFDA's purpose is to promote fair and efficient brewer and wholesale relationships in Illinois. As evidenced by the Act's restrictions on forum and arbitration clauses and the restrictions it imposes on terminations of distributorships, at least part of the Act is meant to deal with perceived inequitable bargaining positions between brewers and wholesalers in their contracts. This is at the center of Stawski's claim, that as a wholesaler, it is not in a position to counter the demands of the brewer, despite what Stawski claims has been a long and prosperous relationship for each. Moreover, regardless of any agreement entered into between a wholesaler and a brewer, Illinois certainly maintains a strong interest in regulating that relationship when the

13

wholesaler is located in Illinois. To examine the restrictions on arbitration in a vacuum would be to eviscerate the protections Illinois hoped to provide by passage of the IBIFDA. If any arbitration clause were looked at as outside of the Act in this analysis, such clauses could easily be inserted into contracts and the IBIFDA would not apply in the very situations where the Act attempts to level a playing field Illinois public policy already considers slanted. It would also inhibit Illinois's ability to structure its liquor distribution system because the Act could be avoided (or bargained away) by simply placing a forum selection or arbitration clause in the contract, thereby restricting Illinois's ability to structure its three-tiered liquor distribution system. Without such restrictions the IBIFDA and the protections it attempts to impose would be rendered meaningless.[5]

Because the court concludes that a conflict exists between the provisions of the IBIFDA and the FAA and because the IBIFDA implicates issues sufficiently related to the core concerns reserved to states under the Twenty-first Amendment, the interests under the IBIFDA trump the requirements under the FAA in this case. Accordingly, Stawski's motion to stay the arbitration scheduled for June 3, 2003 is granted while Zywiec's motion to stay this case and compel arbitration is denied.

---

[5]The court finds unpersuasive Zywiec's claim that if Illinois could regulate arbitration disputes under the Twenty-first Amendment it could regulate any method of dispute resolution and "abolish due process." Instead, when dealing with other sources of federal power outside of the Commerce Clause, "the reach of the Twenty-first Amendment is far more limited." *Kendall-Jackson Winery, Ltd.* v. *Branson*, 82 F. Supp. 2d 844, 874 (N.D. Ill. 2000). *See also*, 44 *Liquormart, Inc.* v. *Rhode Island*, 517 U.S. 484, 516 (1996) ("[A]lthough the Twenty-first Amendment limits the effect of the dormant Commerce Clause on a State's regulatory power over the delivery or use of intoxicating beverages within its borders, the Amendment does not license the State to ignore their obligations under other provisions of the Constitution.").

# CONCLUSION

For the reasons stated above, Zywicc's motion for a stay of this case and to compel arbitration is denied [#7] while Stawski's motion to stay arbitration is granted [#12]. The court orders the arbitration between the parties scheduled for June 3, 2003 in Warsaw, Poland stayed pending resolution of this case. This case will be called for status on June 10, 2003 at 9:30 a.m. In the meantime, the parties are directed to meet in a sincere effort to resolve this case.

ENTER: _____

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 22, 2003

15