# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8708 | **DATE** | 10/6/2003 |
| **CASE TITLE** | Stawski Distributing Co., Inc. vs. Zywiec Breweries PLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The temporary restraining order is lifted with respect to those territories outside of Illinois. The temporary restraining order stands as it relates to Illinois. The evidentiary hearing on Stawski's motion for a preliminary injunction set for 10/10/03 stands.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 0 7 2003 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 48 |
| | Mail AO 450 form. | docket deputy initials | |
| | Copy to judge/magistrate judge. | | |
| MD | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STAWSKI DISTRIBUTING CO., INC., | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) No. 02 C 8708 |
| | ) Judge Joan H. Lefkow |
| ZYWIEC BREWERIES PLC, | ) ) |
| Defendant. | ) ) ) |

DOCKETED
OCT 0 7 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Stawski Distributing Co., Inc. ("Stawski"), filed this action against defendant, Zywiec Breweries PLC ("Zywiec"), seeking to enjoin Zywiec from wrongfully terminating a beer distribution relationship under the Illinois Beer Industry Fair Dealing Act, 815 ILCS 720 *et. seq.* ("IBIFDA" or the "Act"). Stawski is an Illinois corporation with its principal place of business in Chicago. Zywiec is a Polish corporation with its principal place of business in Poland. The amount in controversy exceeds $75,000. This court's jurisdiction, therefore, rests in 28 U.S.C. § 1332(a)(2). Pending before the court is Stawski's motion for a preliminary injunction, which is set for hearing on October 10, 2003. The court takes this opportunity to narrow the issues to be presented.[1]

---

[1] On May 22, 2003, this court entered a memorandum opinion and order denying Zywiec's motion to stay this case in favor of arbitration and granting Stawski's motion to stay arbitration. That decision is on appeal to the United States Court of Appeals for the Seventh Circuit. Nevertheless, this court retains jurisdiction over Stawski's motion for a preliminary injunction. *See CED's Inc.* v. *United States Envtl. Protect. Agency*, 745 F.2d 1092, 1095 (7th Cir. 1984); *Schwinn Bicycle Co.* v. *Ross Bicycles*, No. 87 C 0914, at *1 (N.D. Ill. May 9, 1988). On July 11, 2003, Stawski's motion for a temporary restraining order was granted and the parties were ordered to continue performance in accordance with their distribution agreement, which was set to expire on July 15, 2003.



## FACTS

Stawski is an importer and distributor of wine, spirits, beer and mineral water. Zywiec is a manufacturer of beers located in Zywiec, Poland. Stawski formerly served as the exclusive distributor of Zywiec's products in the United States, but currently imports and distributes only to the states of Illinois, Michigan, Wisconsin, Indiana, Ohio, Minnesota, and Colorado. Stawski has imported Zywiec's products into the United States since 1959. The parties entered into their most recent agreement (the "Import Agreement") on July 7, 1997. In a letter July 10, 2002, Zywiec notified Stawski that it intended to terminate the Import Agreement effective July 10, 2003. In another letter dated July 10, 2002, Zywiec provided its reasons for terminating the Import Agreement.

## STANDARDS

The moving party seeking a preliminary injunction must demonstrate, as a threshold matter, (1) its case has some likelihood of succeeding on the merits; (2) there is no adequate remedy at law; and (3) it will suffer irreparable harm if a preliminary injunction is not granted. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

If Stawski meets all three conditions, the court must consider whether the non-moving party will suffer irreparable harm if the preliminary injunction is granted and balance that harm against the irreparable harm to the moving party if relief is denied. *Id.* A "sliding scale" approach, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Id.* Further, the court must consider the public

2

interest in granting or denying the injunction. *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 388-89 (7th Cir. 1984).

## DISCUSSION

### A. Likelihood of success on the merits

Slawski represents that it has a strong likelihood of success on the merits because of Zywiec's clear violations of the IBIFDA. The IBIFDA places a number of restrictions on relationships between beer wholesalers and brewers, and these restrictions are deemed incorporated into every agreement between an Illinois wholesaler and a brewer. 815 ILCS 720/2(b). Section 3 of the IBIFDA restricts a brewer from canceling or failing to renew an agreement without proper notice, which the Act defines as a notice of cancellation in writing, sent by certified mail and containing, *inter alia*, "a complete statement of the reasons therefore, including all data and documentation necessary to fully apprise the wholesaler of the reasons for the action." 815 ILCS 720/3(2). Section 4 of the IBIFDA states that a brewer cannot terminate a relationship with a wholesaler without good cause and must have (1) made a good faith effort to resolve any disagreements; (2) furnished notice under Section 3; and (3) provided the wholesaler a 90-day period to cure the stated reasons for the termination. 815 ILCS 720/4. Section 5 prohibits a brewer from (i) providing a written contract that does not conform to the provisions of the Act; (ii) refusing to approve or requiring a wholesaler to terminate a manager or successor manager without good cause; (iii) presenting an agreement attempting to waive compliance with any provisions of the statute; (iv) inducing or coercing any wholesaler to consent to an agreement that does not comply with the statute; and (v) presenting an agreement requiring the wholesaler to arbitrate all disputes without offering the wholesaler in writing the opportunity to reject

3

arbitration and elect to resolve all disputes by maintaining a civil suit in accordance with the statute. 815 ILCS 720/5.

According to Stawski, it has a likelihood of success on the merits because Zywiec tendered an agreement failing to conform to the IBIFDA, its notice of termination failed to comply with the notice provisions of Section 3 of the Act and failed to provide Stawski with an opportunity to cure. Moreover, Stawski maintains that the notice of termination did not properly demonstrate how Stawski failed to comply with any essential and reasonable requirements under the Import Agreement.

Zywiec, in response, presents a number of reasons why Stawski is unlikely to succeed on the merits. First, Zywiec argues that the IBIFDA does not apply to this suit because both Poland and the United States have ratified the United Nations Convention on Contracts for the International Sale of Goods (the "CISG"). Zywiec maintains that the CISG applies to "contracts of sale of goods between parties" from different countries. Zywiec also argues that as a treaty the CISG should be treated as the "supreme Law of the Land" and must preempt state law when a conflict exists. According to Zywiec, because the parties have a mutually agreed upon means for terminating a contract, which it followed, the CISG must apply and trump any rights afforded under the IBIFDA.

This argument is unpersuasive. Similar to the court's ruling on Zywiec's motion to compel arbitration, if this were a typical case, there could be little dispute that the CISG would apply and be considered the authoritative law on this subject. Here, however, as previously concluded, the IBIFDA was promulgated pursuant to powers reserved to Illinois under the Twenty-first Amendment to the United States Constitution. It is no doubt correct that a treaty is

considered "equal in stature and force as any other domestic federal law." *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 616 n.2 (7th Cir. 1989) (quoting *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1161 n.19 (5th Cir. 1987)). But the court has already concluded that because the IBIFDA implicates issues related to core concerns reserved to states under the Twenty-first Amendment, its provisions are not preempted from conflicting portions of federal law (as the court previously decided here, the IBIFDA provisions are not preempted by the Federal Arbitration Act). There is no persuasive reason to suggest that the CISG must treated any differently, particularly when it is to be given the same weight as any other federal statute. Thus, this argument fails to establish that Stawski does not have a substantial likelihood of success.

Zywiec next argues that Polish Law governs the Import Agreement and, therefore, the IBIFDA is not applicable. Zywiec contends that an analysis involving traditional Illinois choice of law rules would produce such a result based on the forum selection clause contained in the Import Agreement. The court disagrees. In *Generac Corp. v. Caterpillar, Inc.*, 172 F.3d 971, 974-75 (7th Cir. 1999), the Seventh Circuit overruled those portions of *Diesel Service Co. v. AMBAC Int'l Corp.*, 961 F.2d 635 (7th Cir. 1992), that applied a traditional conflicts of law analysis to the Wisconsin Fair Dealership Law ("WFDL"). The court noted that the WFDL contained its own statutory choice of law rule because it applied to dealerships "situated in this state." 172 F.3d at 974 (quoting Wis. Stat. § 135.02(2)). This specification as to who can take advantage of the statue's protections, along with the announced purpose of the statute to apply "[t]o govern all dealerships . . . to the full extent consistent with the constitutions of this state and

the United States," persuaded the court that the Wisconsin legislature did not intend general choice of law rules to apply to WFDL claims. *Id.* at 976.

Based on the Seventh Circuit's analysis in *Generac*, the language of the IBIFDA establishes an intention on the part of the Illinois legislature not to apply general choice of law rules to IBIFDA claims. Similar to the WFDL, the IBIFDA specifically defines those within its coverage, as a wholesaler is "any person, other than a manufacturer licensed under the Liquor Control Act of 1934, who is engaged in this State in purchasing, storing, possessing, or warehousing any alcoholic liquors for resale or reselling at wholesale, whether within or without this State." 815 ILCS 720.1.1(3). A brewer is defined as "a person engaged in the manufacture of beer . . ., a foreign importer under the provisions of the Liquor Control Act of 1934, or a person who owns or controls the trademark, brand, or name of beer." 815 ILCS 720 ILCS 720.1.1(4). Neither party disputes that Stawski is a wholesaler or that Zywiec is a brewer. Moreover, the IBIFDA is specifically "incorporated into and shall be deemed a part of every agreement between brewers and wholesalers and shall govern all relations between brewers and their wholesalers to the full extent consistent with the constitutions and laws of this State and the United States." 815 ILCS 720/2(B). Because the IBIFDA specifies who may take advantage of the protections its provides and because it is deemed part of every agreement between the statutorily defined terms "brewers" and "wholesalers" and "shall" govern their relations, the language clearly establishes the Illinois legislature's intention not to apply general choice of law rules to IBIFDA claims.[2]

---

[2] Zywiec's response to *Generac* is its argument that the court's analysis in that case was limited to the WFDL and no court has applied the *Generac* case to an Illinois statute. Neither argument is persuasive

6

For its next argument Zywiec claims that Stawski does not have a substantial likelihood of success at least with respect to territories outside of Illinois because the IBIFDA does not and cannot apply extraterritorially. *See, e.g., Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579 (1986) ("When a state statute directly regulates . . . interstate commerce," the courts "have generally struck down the statute without further inquiry."); *Morley-Murphy Co. v. Zenith Elecs. Corp.*, 142 F.3d 373, 379-80 (7th Cir. 1998) ("We think, in light of both the presumption against extraterritoriality and the troublesome nature of the constitutional questions that would be raised if the WFDL reached beyond Wisconsin's borders, that the Wisconsin Supreme Court would construe the WFDL as not applying to Morley-Murphy's sales of Zenith products in Minnesota and Iowa."); *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2002 WL 31018302, at *3 (N.D. Ill. Sept. 9, 2002) (concluding that the Illinois Franchise Disclosure Act cannot be construed to apply to sales outside of Illinois because "public policy choices of the Illinois legislature would be imposed upon the consumers of Indiana, Iowa, Michigan, and Wisconsin."). Based on the Seventh Circuit's analysis in *Morley-Murphy*, the court agrees that the IBIFDA should not be construed as governing the parties' relationship outside of Illinois. To hold otherwise would be to allow Illinois to impose regulations in other states, which raises "troublesome" issues under the Commerce Clause. *See Morley-Murphy*, 142 F.3d at 379-80. Stawski's response to this argument is to claim that the IBIFDA does not regulate any "commerce" but instead only regulates the parties agreement, which gives Stawski rights outside of Illinois. Nevertheless,

Stawski does not attempt to distinguish *Morley-Murphy*, which the court finds applicable here.[3] While true that the plaintiff in *Morley-Murphy* maintained physical dealerships outside of Wisconsin under its agreement, the court agrees with the reasoning in *H.R.R Zimmerman Co.* that this is "legally indistinguishable" because the Seventh Circuit "framed its argument in terms of economic activity occurring outside of Wisconsin being subject to Wisconsin law." 2002 WL 31019302, at *4. Thus, Stawski would not have a substantial likelihood of success for its claims based on territories outside of Illinois.

Finally, Zywiec argues that even assuming the IBIFDA applies here, it has fully complied with the Act. Zywiec argues that (1) Stawski made repeated late payments to Zywiec, which is a ground for termination under the IBIFDA without notice or an opportunity to cure, 815 ILCS 720/3(3)(A) and (2) Stawski violated the marketing provisions of the Import Agreement and failed to market Zywiec as a premium import. Moreover, Zywiec claims that it gave Stawski notice of the termination that complied with the IBIFDA by sending two letters dated July 10, 2002. According to Zywiec, these letters stated that the Import Agreement would be termianted in 12 months and Stawski never did anything to cure the alleged deficiencies.

In response, Stawski argues that Zywiec violated the Act by (1) tendering an agreement which violated the IBIFDA; (2) not sending a notice of termination by certified mail; (3) failing to give a complete statement of reasons for the termination, including "all data and documentation necessary to fully apprise the wholesaler of the reasons for the action;" (4) failing

---

[3]Stawski represents that four of the other six states comprising its territory have statutes similar to the IBIFDA which prohibit terminating beer wholesalers without good cause. Stawski submits that it intends to amend its complaint to assert claims under these other statutes after the Seventh Circuit relinquishes its jurisdiction. Needless to say, this cannot figure into the analysis here.

8

to provide Stawski with an opportunity to cure; and (5) failing to indicate or demonstrate how Stawski failed to comply with essential and reasonable requirements under the parties' agreement. Moreover, with respect to the alleged late payments, Stawski maintains that any late payments were never given as a reason for the termination and such payments allegedly took place in 2001, more than a year before the termination attempt.

Given that Stawski's threshold showing of a likelihood of success must only be "better than negligible," *see Roland Mach. Co.*, 749 F.2d at 388-89 (quoting *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982)), and given that Stawski has presented portions of the IBIFDA which it appears Zywiec did not abide by, its likelihood of success is certainly more than negligible. A review of the evidence suggests that, at the very least, Zywiec's termination did not provide Stawski with an opportunity to cure, did not demonstrate how Stawski failed to comply with any essential and reasonable requirements under the Import Agreement and did not provide any of the required documentation. One of the July 10, 2002 letters from Zywiec to Stawski states only that "I am ending this contract with 12 months notice from the day of receiving this message." The other July 10, 2002 letter (which Stawski maintains was received much later than that date) states that the Import Agreement has been terminated, and does not provide Stawski with an opportunity to cure. Thus, with respect to its distribution relationship in Illinois, Stawski has established a likelihood of success sufficient for this factor to weigh in favor of a preliminary injunction.

## B. Adequate remedy at law/Irreparable harm

To show the lack of adequate remedy at law, a plaintiff must show that an award of damages at the end of trial will be "seriously deficient as a remedy for the harm suffered."

9

*Roland*, 749 F.2d at 386. A damages remedy may be found inadequate "if it comes too late to save the plaintiff's business or if the nature of the plaintiff's loss may make damages very difficult to calculate." *Budget Rent A Car Corp. v. G & M Truck Rental*, No. 03 C 2434, 2003 WL 21501784, at *6 (N.D. Ill. June 26, 2003) (quoting *P.P. & K, Inc. v. McCumber*, No. 94 C 0988, 1994 U.S. Dist. LEXIS 5775, at *27 (N.D. Ill. 1994).

Stawski argues that it has no adequate remedy at law because if it loses the Zywiec distribution rights, it will lose a substantial amount of its sales volume and profits, it will lose good-will gained from 45 years of distributing Zywiec's products, and likely will be forced to go out of business. Zywiec disagrees and argues that the profits Stawski obtains from distributing Zywiec products is easily calculable and can be remedied through monetary damages. Moreover, Zywiec argues that Stanley Stawski, the President and founder of the company, admitted in his deposition that the business would be able to reduce expenses and continue even if it loses the Zywiec product line.

With respect to profits, Stawski's records indicate that in 2001, Zywiec products made up 26.4 percent of Stawski's sales and 25.0 percent of its gross profits. In 2002, Zywiec products made up about 30 percent of Stawski's sales and 26.6 percent of its gross profits. For the first seven months of 2003, after correcting for a one-time adjustment reflecting an inventory recount, Zywiec products made up 31 percent of Stawski's sales and 28.6 percent of its gross profits. (Kociecki Dep. at 33, 94-100.) In addition, Stanley Stawski testified that the loss of the Zywiec products would be "devastating." (Stawski dep. at 80.) Stawski's General Manager, Robert Kociecki, also testified that in his view Stawski would be unable to remain financially viable without the Zywiec brand. (Kociecki dep. at 59, 67.) Moreover, Zywiec does not dispute that

substantial goodwill would be lost if Stawski no longer held distribution rights over the Zywiec products.

The court, however, notes that the issues of inadequate remedy at law and irreparable harm are significantly changed based on the conclusion above that the IBIFDA does not have extraterritorial reach. While the evidence shows that Zywiec represents approximately 30 percent of Stawski's volume of sales and approximately one-quarter of its profits, the evidence does not clarify what portion of the volume and profit is attributable to sales in Illinois. Whatever these amounts would be, they would not be difficult to calculate or ascertain and could be compensated based on monetary damages. *E.g., Chicago Typographical Union, No. 16 v. Chicago Newspaper Publishers' Ass'n*, 620 F.2d 602, 604 (7th Cir. 1980) ("Allegation of the loss of monetary . . . benefits does not constitute irreparable harm in that the adequate legal remedy of damages is available."); *Leen v. Carr*, 945 F. Supp. 1151, 1157 (N.D. Ill. 1996) ("[I]rreparable harm occurs only where monetary damages cannot adequately compensate the injury or where the injury cannot be measured by pecuniary standards.") (citation omitted).

Further, with respect to Stawski's claim that if a preliminary injunction is not granted it will lose a substantial amount of goodwill and perhaps be forced to close its business, the court must again confront the problem of the IBIFDA's limited reach. Illinois is but one of the seven states Stawski distributes to. There is insufficient evidence in the record to suggest that Illinois sales makes up a substantial enough amount of either Stawski's sales volumes or profits to show an inadequate remedy at law or irreparable harm. As Stawski states later in his brief, the IBIFDA implicitly creates a 20% sales volume threshold for injunctive relief to be afforded. *See also, Praefke Auto Electronic & Battery Co. v. Tecumseh Prods. Co.*, 255 F.3d 460, 463 (7th Cir.

11

2001) ("Because [the defendant's] parts are only a small part of [the plaintiff's] business (about 13 percent of its total sales revenues and a slightly higher percentage of its profits . . .,) [the plaintiff's] profits have not fallen to a point that threatens insolvency."); *Louis Glunz Beer, Inc. v. Martlet Importing Co.*, No. 93 C 7552, 1994 U.S. Dist. Lexis 13231, at *4-5 (September 20, 1994) (in case involving the IBIFDA, noting that the distribution relationship entered into between the distributor and supplier only accounted for 6 percent of the plaintiff's total sales, causing the court to doubt whether the plaintiff's business was in serious jeopardy of failing). Moreover, it is possible the evidence may show that whatever Stawski's Illinois sales are, it is not substantial enough to prevent insolvency due to the loss of the other states which make up the distribution agreement. These are the issues the parties should consider for the October 10, 2003 evidentiary hearing. If Stawski's sales in Illinois do not make up a significant enough amount to warrant injunctive relief or if the evidence shows that an injunction with respect to Illinois would not otherwise prevent insolvency, no inadequate remedy at law or irreparable harm will have been established and the motion for a preliminary injunction will be denied.

## CONCLUSION

The temporary restraining order entered on July 11, 2003 is lifted with respect to those territories outside of Illinois. The temporary restraining order stands as it relates to Illinois. The evidentiary hearing on Stawski's motion for a preliminary injunction set for October 10, 2003 at 10:30 a.m. stands.

Enter: /s/ Joan N. Lefkow

JOAN HUMPHREY LEFKOW
United States District Judge

Date: October 6, 2003

12