# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8708 | **DATE** | 11/10/2003 |
| **CASE TITLE** | Stawski Distributing Co., Inc. vs. Zywiec Breweries PLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for a preliminary injunction [31-1] is granted. Plaintiff is to submit to chambers a proposed draft order, agreed to in form, no later than 11/19/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | NOV 12 2003 | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 51 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 11/10/2003 | |
| MD | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD mailing deputy initials |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STAWSKI DISTRIBUTING CO., INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ZYWIEC BREWERIES PLC, ) <br> ) <br> Defendant. ) <br> ) | **DOCKETED** <br> NOV 1 2 2003 <br><br> No. 02 C 8708 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

On October 10, 2003, this court held a hearing on the motion of plaintiff, Stawski Distributing Co. ("Stawski"), for a preliminary injunction preventing defendant, Zywiec Breweries, PLC ("Zywiec"), from wrongfully terminating a beer distribution relationship under the Illinois Beer Industry Fair Dealing Act, 815 ILCS 720 *et. seq.* ("IBIFDA" or the "Act"). Previously, the court entered a memorandum opinion and order narrowing the issues to be presented at the hearing, concluding that Stawski has made out the first portion of its burden for a preliminary injunction in that it has a likelihood of success on the merits that is better than negligible. *See Stawski v. Zywiec Breweries, PLC*, No. 02 C 8708, 2003 WL 22290412, at *4 (N.D. Ill. Oct. 6, 2003). The court left the issues of whether Stawski has an adequate remedy at law, would suffer irreparable harm, and the balancing of the harms to be developed at the hearing. The court, having considered and weighed the evidence, sets forth its findings of fact and conclusions of law.

51

I. **Findings of Fact**

1. Stawski is an importer and distributor of beverages located in Chicago, Illinois.

2. Zywiec is a manufacturer of beers located in Zywiec, Poland.

3. In 1992, Stawski entered into an agreement with Zywiec to import its products into the United States. Prior to 1992, Stawski imported Zywiec's products into the United States under an agreement with the Polish government export company.

4. On July 7, 1997, the parties entered into a second Import and Wholesale Distribution Agreement, with Stawski to distribute Zywiec's products into the United States excluding New York, New Jersey and Connecticut.

5. In November 2000, the parties modified their Import and Wholesale Distribution Agreement and limited Stawski's territory to six states: Illinois, Michigan, Wisconsin, Indiana, Ohio and Minnesota.

6. On July 10, 2002, Zywiec notified Stawski that it intended to terminate the Import Agreement effective July 10, 2003.

7. Zywiec has not yet appointed a distributor to replace Stawski in Illinois.

8. Zywiec does not know the identity of Stawski's customers in Illinois.

9. Through August 29, 2003, sales of Zywiec products within Illinois were 28.92% of Stawski's total company revenues.

10. Through August 29, 2003, sales of Zywiec products within Illinois were approximately 26% of Stawski's total company profit.[1]

---

[1] Robert Kociecki, Stawski's sales manager, testified at the evidentiary hearing that through August 29, 2003, Zywiec products made up 34.25% of Stawski's gross profits. The court agrees with Zywiec, however, that this
(continued...)

11. Stawski's sales of Zywiec products within Illinois for the year ended 2002 were 28.81% of total company revenues.

12. Stawski's sales of Zywiec products within Illinois for the year ended 2002 were 25.77% of Stawski's total company profit.

13. Stawski's sales of Zywiec products within Illinois for the year ended 2001 constituted 25.02% of Stawski's total company revenues.

14. Stawski's sales of Zywiec products within Illinois for the year ended 2001 constituted 24.04% of Stawski's total company profit.

15. Robert Kociecki ("Kociecki"), Stawski's general manager, testified that Stawski would lose an "insurmountable" amount of profits if it no longer distributed the Zywiec products. He testified a termination of the Import Agreement "may cause the company to go out of business, and most likely will cause the company to go out of business." Kociecki further opined that if Stawski lost Zywiec, it would have a snowball effect causing the company to lose employees and customers.

16. Stanley Stawski testified at his deposition, which was made part of the record at the hearing, that the loss of Zywiec products would "devastating." Thereafter, however, he described actions his company could take if the products were lost, including letting go five or six staff members and having the remaining salesmen selling fewer products to more customers.

---

[1](...continued)
nearly 10 percent increase in profits is not believable. At both the hearing and his deposition Kociecki admitted that he failed to make an adjustment for an inventory recount conducted in 2003 and that this recount inflated Stawski's gross profits. (Hr. Tr. 12-16.) In his deposition Kociecki clarified that with this adjustment, sales of Zywiec products made up 28.6% of Stawski's total gross profits in 2003. Therefore, after adjusting for those sales taking place outside of Illinois, the court accepts the amount attributable to Illinois profits as approximately 26 percent.

17. Krzysztof Palczewski, Zywiec's export manager, testified that in territories where Stawski has been replaced by another distributor, Zywiec's sales have increased.

18. Palczewski testified that if Zywiec were forced to continue its relationship with Stawski, Zywiec's sales would remain stagnant and Zywiec will be deprived of sales increases and increased exposure and profits.

19. Sales of Zywiec products in the United States represent only about 1% of Zywiec's sales worldwide.

## 1. Conclusions of Law

### A. *Inadequate Remedy at Law/Irreparable Harm*

"A party seeking a preliminary injunction must demonstrate that [it] will suffer an irreparable injury if the injunction is not granted for which [it has] no adequate remedy at law." *Re/Max N. Cent.* v. *Cook*, 272 F.3d 424, 432 (7th Cir. 2001). To demonstrate irreparable injury, the moving party must show that it will suffer "harm that cannot be prevented or fully rectified by the final judgment after trial." *Anderson* v. *U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001). "[A] conclusion that the injury is irreparable necessarily shows that there is no adequate remedy at law." *Fleet Wholesale Supply Co.* v. *Remington Arms. Co.*, 846 F.2d 1095, 1098 (7th Cir. 1988).

In the October 6, 2003, memorandum opinion and order, the court noted that whatever the amount of any lost profits Stawski would suffer as a result of the termination of the Import Agreement, these amounts would not be difficult to ascertain and could be compensated based on monetary damages. *E.g., Praefke Auto Elec. & Battery Co., Inc.* v. *Tecumseh Prods. Co., Inc.*, 255 F.3d 460, 463 (7th Cir. 2001) ("[Plaintiff's] losses are purely financial, easily measured, and

4

readily compensated."); *Chicago Typographical Union, No. 16* v. *Chicago Newspaper Publishers' Ass'n*, 620 F.2d 602, 604 (7th Cir. 1980) ("Allegation of the loss of monetary . . . benefits does not constitute irreparable harm in that the adequate legal remedy of damages is available."). Moreover, the court is not persuaded that the loss of the Zywiec products would push Stawski to the brink of insolvency.[2] At the preliminary injunction hearing Kociecki testified that the loss of Zywiec products would cause Stawski to lose profits in an "insurmountable amount that may cause the company to go out of business, and most likely will cause the company to go out of business." (Hr. Tr. 11.) He further testified that Stawski could not operate on a profitable basis if it loses the Zywiec products because a snowball effect would be created in which Stawski will "lose employees" and "lose customers." (Hr. Tr. 11-12.) In his deposition Stanley Stawski testified that the loss of Zywiec products would be "devastating." Nevertheless, thereafter he described certain actions his company could take if the Zywiec products were lost, including letting go five or six staff members and having "the salesman that remained on call on more customers and sell fewer products." (Stawski dep. at 81.)

In addition, the undisputed evidence is that Stawski distributes 150 beer, wine, and spirit products from 14 countries. (Def. Exs. 23, 31.) Testimony at the hearing established that Stawski sells Okocim, another Polish beer, and Kociecki did state that Stawski could use that brand to make up for some of the lost sales of Zywiec. (Hr. Tr. 16-17.) While both Kociecki and

---

[2]Stawski argues that the IBIFDA implicitly creates a 20% sales volume threshold for injunctive relief to be afforded, which the court accepted at least for purposes of the October 6 memorandum opinion and order. However, as noted by Zywiec, this minimum threshold is not contained in the IBIFDA itself and the only support provided for it comes from one statement of a representative contained in the legislative history. Rather than view this as a solid demarcation line, the court views the 20% sales volume threshold as a rough marker where injunctive relief may be considered. Amounts less than that number have already been found insufficient to warrant a preliminary injunction. *E.g.*, *Praefke Auto Elec. & Battery*, 255 F.3d at 463 (finding 13% of total sales revenue too small a portion of a plaintiff's business to warrant a preliminary injunction).

Stanley Stawski stated that other retailers may leave Stawski if it no longer distributes Zywiec products, neither was sure, as Kociecki merely stated that "I am not sure" if Okocim would stay with Stawski if it lost Zywiec, and Stanley Stawski stated that he did not know if buyers would be less likely to purchase other products from Stawski because it was "speculation." (Stawski dep. at 85.) Taking all of this evidence together, the court is simply not persuaded that Stawski would be pushed to the brink of insolvency if it were to lose the Zywiec products.

Simply because Stawski would not become insolvent if it lost the Zywiec products, however, does not necessarily mean that Stawski has an adequate remedy at law or would not suffer irreparable harm. *Cf. Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (concluding that district judge was in error for finding that plaintiff would go out of business if no preliminary injunction was granted but nevertheless concluding there was no adequate remedy at law and proof of irreparable harm where "the nature of the losses . . . is such as to make the calculation of these damages a difficult and not very satisfactory process–better than nothing, but not so sure a method of rectifying the wrong . . . that we can be confident that none of the harm . . . in the interim will be irreparable harm."). Due to the loss of Zywiec products, which account for nearly a quarter of Stawski's profits, Stawski at the very least faces a significant restructuring of its business. Moreover, this court previously found that Stawski had a substantial likelihood of success because Zywiec failed to give Stawski a reasonable opportunity to cure any breaches of the Import Agreement. Damages from this violation of IBIFDA are not easily quantified.

More fundamentally, the notion that a later award of damages will suffice is unconvincing in light of the purposes of IBIFDA. IBIFDA imposes procedure: notice of intention to terminate,

6

a statement of reasons, a good faith effort to resolve differences, and time to cure the deficiencies asserted. If the injunction is denied, distribution of Zywiec products can be withdrawn immediately. If Zywiec products are immediately withdrawn, Stawski will, as indicated above, suffer lost profits, loss of good will developed in distributing Zywiec's products for upwards of 40 years, and loss of opportunity to cure. Any compliance by Zywiec with IBIFDA's procedure after final adjudication of the merits would be meaningless as it would by then certainly be too late for Stawski, which would have to cure the matters set out in the notice of termination and further recapture the sales and good will that would inevitably follow the loss of distribution rights.

Thus, for these reasons, the court believes Stawski's has adequately shown an inadequate remedy at law and irreparable harm.

B. *Balancing of the harms*

"[S]ince the defendant may suffer irreparable harm from the entry of a preliminary injunction, the court must not only determine that the plaintiff will suffer irreparable harm if the preliminary injunction is denied–a threshold requirement for granting a preliminary injunction–but also weigh that harm against any irreparable harm that the defendant can show he will suffer if the injunction is granted." *Roland Mach. Co.*, 749 F.2d at 387. In other words, "[t]he court's task in granting or denying a motion for a preliminary injunction is to minimize errors: the error of denying an injunction to one who will in fact . . . go on to win the case on the merits, and error of granting an injunction to one who is going to lose." *Id.* at 388. A "sliding scale" approach, "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh towards its side; the less likely it is the plaintiff will succeed, the

7

more the balance need weigh towards its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). Further, the court must consider the public interest in granting or denying the injunction. *Roland Mach. Co.*, 749 F.2d 388-89.

Zywiec argues that the harm it will suffer if a preliminary injunction is granted is large and difficult to calculate. Zywiec has presented evidence that in territories where Stawski has been replaced by other distributors, Zywiec's sales have substantially increased. Zywiec maintains that if it is forced to continue its relationship with Stawski, it would lose these sales which cannot be easily calculated. *See, e.g., Dayton Heidelberg Distrib. Co. v. Vineyard Brands*, 108 F. Supp. 2d 859, 865-66 (S.D. Ohio 2000).

This harm must be balanced against the harm to Stawski, namely, disruption of its business, loss of goodwill, and the inability to exercise its statutory right to cure any alleged breaches of the Import Agreement. The court notes, however, that the balance need weigh toward Stawski only to a small degree because its likelihood of success, at least with respect to its claim that Zywiec did not provide an opportunity to cure, is high. Zywiec does not argue that it in fact provided Stawski an opportunity to cure. Instead, it maintains that Stawski was terminated for reasons which do not require an opportunity to cure, namely making late payments and "fraudulent" conduct. *See* 815 ILCS 720/3(3)(A) and (G). As Stawski points out, however, late payments were not listed as a reason for the termination in the notice Zywiec provided to Stawski and the alleged fraudulent conduct (concerning Zywiec's trademark) took place after Zywiec sent Stawski notice of the termination and therefore could not have been grounds for the termination.

8

Based on the above, the balance of the harms weighs in favor of Stawski. While Zywiec worries about money it may lose by continuing its relationship with Stawski, it will still at least be able to distribute the products, even if through a distributor it does not prefer. Evidence also showed that Zywiec's sales in the United States constitute only 1% of Zywiec's sales worldwide, and any restriction on this small amount of sales cannot be viewed as a serious blow to Zywiec. By contrast, Stawski faces disruption and restructuring of its business, loss of goodwill and the inability to exercise its statutorily protected right to cure breaches of its distribution agreement. Combined with its high likelihood of success on the merits, the court believes that the balance of the harms weighs in Stawski's favor.

C. *Public interest*

The Illinois legislature has determined that the protections of IBIFDA are important to its regulation of alcoholic beverages. As stated, it is essentially a procedural statute. Without injunctive relief, breweries will have no incentive to obey the law. Thus, public policy weighs in favor of an injunction as well.

D. *Injunction Bond (Rule 65(c))*

Federal Rule of Civil Procedure 65(c) provides that

> No restraining order or preliminary injunction shall issue except on the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

*See also, Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 887 (7th Cir. 2000) ("When setting the amount of security, district courts should err on the high side."). Zywiec argues that it would lose an estimated $2.8 million over a two-year period (which it estimates as the time until

final adjudication of the case) if it is forced to continue an interlocutory relationship with Stawski and, therefore, requests a bond at least in that amount. The court finds this amount excessive for a number of reasons. First, this case will likely proceed on a quicker pace than Zywiec predicts, as the Seventh Circuit may order the case to arbitration and, if not, based on the level of progress so far, this court will take a substantially less amount of time to enter final judgment. Second, Zywiec's calculation of damages appears speculative and assumes a seamless transition from one distributor to another. Finally, as stated above, the court believes Stawski has a substantial likelihood of success on the merits, which figures into the analysis here. Based on all of this, the court believes that an appropriate amount is $250,000. Thus, the court will require Stawski to post a $250,000 bond.

## CONCLUSION

For the reasons stated above, Stawski's motion for a preliminary injunction is granted [#31]. Stawski is to submit to chambers a proposed draft order for injunction, agreed to in form, not later than November 19, 2003.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: November 10, 2003